UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELICIA ACOSTA, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 05 C 2571 |
| v. | )<br>) Judge Joan B. Gottschall |
| VALLEY VIEW DENTAL<br>CENTER P.C., an Illinois Corporation, | )<br>) Magistrate Judge Martin C. Ashman |
| Defendant. | )<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Felicia Acosta ("Acosta") has filed the instant suit, alleging violation by defendant Valley View Dental Center P.C. ("Valley View") of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, Pub.L. 102-166 ("Title VII"). Specifically, Acosta claims that she was sexually harassed, both *quid pro quo* and via a hostile workplace environment, and that she was subsequently retaliated against for filing a sexual harassment claim, all in violation of Title VII. Acosta also claims that she left Valley View as a result of this alleged harassment and retaliation and was therefore constructively terminated. Presently before the court is Valley View's motion for summary judgment. For the reasons set forth below, summary judgment is denied.

## I. BACKGROUND

Acosta, who was employed at Valley View as a part-time dental assistant, alleges that she was sexually harassed over the period of a year[1] by Pradeep Khurana, D.D.S., ("Khurana"), an owner of Valley View and one of Acosta's supervisors. Specifically, Acosta claims that Khurana, in response to an overtime request by Acosta, groped his genitals, saying "Overtime this" to Acosta and a co-worker. Acosta also claims that Khurana inappropriately touched her numerous times, including running his fingers through her hair, "tickling" her under the arm and the side of her breast, brushing up against her inappropriately, and touching her breast. Khurana also allegedly made personal comments about Acosta's appearance and perfume, and teased her that she should "stop making him jealous" with Valley View's male patients.

On September 21, 2004, Acosta filed a complaint with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment resulting from Khurana's making "sexual comments in a general way" that Acosta found to be "sexually offensive." As a result, according to Acosta, she was ostracized and alienated by her work colleagues, her hours were shortened with consequent reduction in income, and she was deprived of opportunities for overtime and raises in pay.

## II. ANALYSIS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] Acosta was employed at Valley View from April 9, 2002 through December 17, 2004. The events forming the basis of this complaint occurred between January and December 2004.

judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**A. Sexual Harassment**

As an initial matter, the sexual harassment categories of *quid pro quo* harassment and hostile workplace environment have been largely abandoned by the courts since the U.S. Supreme Court's decisions in *Burlington Industries v. Ellerth* and *Faragher v. City of Boca Raton*. 524 U.S. 742, 760-65 (1998); 524 U.S. 775, 807 (1998); *see also Wolf v. Northwest Ind. Symphony Soc.*, 250 F.3d 1136, 1141-42 (7th Cir. 2001). The courts have opted, rather, to distinguish between cases in which the supervisor takes a tangible employment action against the subordinate and those in which he does not. *Wolf*, 250 F.3d at 1141; *see also Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 666 (7th Cir. 2001); *Gentry v. Export Packaging Co.*, 238 F.3d 842, 846 (7th Cir. 2001). An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 642 (7th Cir. 2000).

For Acosta to prevail on a claim of sexual harassment, she must establish that: (1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive work environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004); *Robinson v. Sappington,* 351 F.3d 317, 328-29 (7th Cir. 2003).

A hostile work environment is created when the conduct at issue is "sufficiently severe or pervasive to alter the conditions of the [victim's] employment and create an abusive working environment." *Saxton v. Am. Tel. & Tel. Co.,* 10 F.3d 526, 533 (7th Cir. 1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986) (internal quotations omitted)). The Seventh Circuit has established that, in the workplace, the severity of harassment exists across the following spectrum:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers ….

*Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir. 1995).

Needless to say, when physical contact arising to the level of sexual harassment is alleged, a nuanced and specific factual analysis is critical to establishing its severity: some touching may be inappropriate, but may also be insufficiently egregious to create a hostile environment. For example, casual contact that might be expected among friends (*e.g.*, a hand on the shoulder, a brief hug or a peck on the check) would normally be unlikely to establish a hostile environment in the absence of aggravating circumstances such as continued contact after an objection. *Patton v. Keystone RV Co.*, 455 F.3d 812,

816 (7th Cir. 2006). And "[e]ven more intimate or more crude physical acts-a hand on the thigh, a kiss on the lips, a pinch of the buttocks-may be considered insufficiently abusive to be described as 'severe' when they occur in isolation." *Id.* (quoting *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000) (citations omitted). "But when the physical contact surpasses what (if it were consensual) might be expected between friendly coworkers ... it becomes increasingly difficult to write the conduct off as a pedestrian annoyance." *Hostetler,* 218 F.3d at 808.

Acosta claims that Khurana's exhibitionistic groping of his genitals in the presence of Acosta and another employee, his offensive touching of parts of her body, and his inappropriate comments served to create a hostile work environment. Most dispositive of this motion is Khurana's alleged touching of Acosta, which Valley View characterizes as essentially harmless.[2] Critically, Acosta argues that on one occasion, Khurana touched her "in her armpit area and her breast." Pl.'s Dep. 128; *see also* Statement of Christine Rivera, Dec. 3, 2004. A single such intimate contact, by itself, is sufficient to establish a hostile workplace environment. See *Patton*, 455 F.3d at 817 ("The touching of the 'breast near the nipple for several seconds is severe enough' to constitute a hostile environment by itself.") (quoting *Worth v. Tyer,* 276 F.3d 249, 268 (7th Cir. 2001)). This act, combined with Khurana's inappropriate tickling of Acosta, and running his fingers through her hair, comprise multiple acts of inappropriate touching that, combined with other offensive behaviors, a reasonable trier of fact could find crossed the line and created a hostile workplace environment. Viewing the facts in the

---

[2] Valley View enumerates the touching incidents as: (1) two occasions when Acosta left the room in which she was assisting Khurana and was touched or "tickled"; (2) two occasions when Khurana brushed up against the back of her body; and (3) two occasions when Khurana approached Acosta and ran his fingers through her hair.

5

light most favorable to Acosta, she has alleged material facts establishing the elements requisite to a claim of sexual harassment and that is sufficient to defeat Valley View's motion for summary judgment.

**B. Retaliation**

Acosta also claims that Valley View retaliated against her both for complaining to Dr. Paramvir Singh ("Singh") (the co-owner, with Khurana, of Valley View) about Khurana's behavior, and for filing a complaint with the Illinois Department of Human Rights and the EEOC alleging sexual harassment. According to Acosta, she was: (1) ostracized and alienated by her fellow workers; (2) sent home early and so lost income; (3) denied her written annual review; (4) reprimanded in writing for pretextual reasons; and (5) constructively discharged.

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). An employee can prove retaliation using either direct or indirect methods of proof. Under the direct method, a plaintiff can prove retaliation by presenting direct evidence of 1) a statutorily protected activity; 2) an adverse action taken by the employer; and 3) a causal connection between the two. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). Under the direct method, a plaintiff may offer direct evidence that she engaged in protected activity (such as filing a charge of sexual harassment) and as a result suffered an adverse employment action. *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d

840, 848 (7th Cir. 2007) (citing *Stone v. City of Indianapolis Pub. Util. Div.,* 281 F.3d 640, 642 (7th Cir. 2002). If the evidence is uncontradicted, the plaintiff is entitled to summary judgment. *Pantoja*, 495 F.3d at 848. If it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation. *Id.*

Alternatively, a plaintiff may present indirect evidence of discrimination under the burden-shifting protocol set forth in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 802-03 (1973). This approach requires the plaintiff to show that, after filing the charge, only she, and not any other similarly situated employee who did not file a charge, was subjected to an adverse employment action, despite the fact that she was performing her job satisfactorily. *Pantoja*, 495 F.3d at 848. If the defendant does not rebut that evidence, the plaintiff is entitled to summary judgment. *Id.* If the defendant presents unrebutted evidenceof a noninvidious reason for the adverse action, he is entitled to summary judgment; otherwise there must be a trial. *Id.*

In the instant case, Acosta has alleged facts that satisfy the first two elements of the direct method, *viz.*, that she filed her complaint of sexual harassment with the IDHR and the EEOC and that she: (1) was the victim of adverse employment actions in the form of being sent home early with consequent loss of earnings; (2) denied a review or raise;[3] (3) subjected to new and unilateral disciplinary procedures in the form of being "written up" for alleged tardiness; and (4) "alienated and ostracized" by her co-workers. Valley View disputes that its actions arose from a retaliatory motive, but, examining the

---

[3] The court addresses the constructive discharge claim below.

evidence in the light most favorable to Acosta, a reasonable finder of fact could find that Valley View was acting in retaliation against Acosta for filing her complaint.

Establishing the third element, the causal nexus between the protected act and the alleged retaliatory acts, is frequently more complex. As the Seventh Circuit has observed, mere temporal proximity is normally insufficient to create an issue of fact on causation in the absence of other evidence. *Pantoja*, 495 F.3d at 849. That is not to say, however, that temporal proximity has no evidentiary weight whatever. Rather, the causal link is frequently established by showing that there is "a suspiciously short period of time between the employees complaint and the adverse action." *Id.* (quoting *Boumehdi*, 489 F.3d at 793.

In the instant case, Acosta presents evidence that shortly after the complaint was filed, she was angrily confronted by Khurana, in the presence of another employee, over the nature of the complaint. Pl.'s 56.1 Statement of Facts, Ex. 3, ¶3. Acosta also alleges that within two weeks of filing her complaint she was "written up" for being late under a new and previously unannounced administrative procedure that was applied selectively to her and not to other tardy employees. *Id.*, Ex 8, 27-30. Additionally, Acosta alleges that, in the several months immediately following her complaint before she left Valley View, she was frequently and unnecessarily sent home early, depriving her of working hours and income. *Id.* at 27. These material facts, which are disputed by Valley View, are sufficient to allege the requisite causal nexus and overcome Valley View's motion for summary judgment.

## C. Constructive Discharge

Finally, Acosta claims that, as a result of the harassment and retaliation, conditions in Valley View's small offices became intolerable, forcing her to leave her part-time position. Acosta claims as a result, therefore, she was, constructively discharged.

To establish a claim for constructive discharge, a plaintiff must prove that unlawful discrimination made her working conditions so intolerable that a reasonable person would be forced to resign. *Boumehdi*, 489 F.3d at 789; *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). Generally, to support such a claim, a plaintiff's working conditions must be even more egregious than those required to meet the generally high standard for hostile work environment claims, because, in the ordinary case, an employee is expected to remain employed while seeking redress. *Tutman v. WBBM-TV, Inc.,* 209 F.3d 1044, 1050 (7th Cir. 2000).

In *Bouhmedi*, the Seventh Circuit found that the threshold for constructive discharge was met when the plaintiff alleged: (1) a repeated pattern of offensive conduct by her supervisor; (2) retaliatory actions after she complained to human resources; and (3) her employer's general failure to respond despite repeated complaints. 489 F.3d at 789. The facts alleged by Acosta parallel those recounted in *Bouhmedi*. Acosta claims that: (1) she endured multiple acts of inappropriate and offensive touching and remarks; (2) her complaints to Singh were allegedly met with no response; (3) and she faced open hostility from her supervisor, adverse job actions, and ostracization by her colleagues as a result of filing her complaint. The court expresses no opinion as to whether Acosta will prevail upon the merits, but a reasonable trier of fact could possibly find that the alleged

sexual harassment and retaliatory acts rendered the situation so intolerable that she could no longer remain at Valley View, and was thus constructively discharged.

### III. CONCLUSION

For the reasons set forth above, Valley View's motion for summary judgment is denied.

ENTER:

                                                                                  /s/
                                              JOAN B. GOTTSCHALL
                                              United States District Judge

DATED: February 27, 2008